**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Zenia Valdez, | No. CV-22-01031-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Zenia Valdez's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial. The Court now addresses Plaintiff's Opening Brief (Doc. 13, "Pl. Br."), Defendant Social Security Administration Commissioner's Response Brief (Doc. 14, "Def. Br."), and Plaintiff's Reply Brief (Doc. 17). The Court has reviewed the briefs and the administrative record (Doc. 12, "R.") and now reverses the Administrative Law Judge's ("ALJ") decision (R. at 10–34) as upheld by the Appeals Council (R. at 1–6).

**I.    BACKGROUND**

Plaintiff applied for SSDI benefits on January 23, 2020, for a period of disability beginning December 14, 2019. (R. at 15, 40–41.[1]) Her claim was denied initially on

---

[1] Plaintiff previously applied for SSDI benefits on January 24, 2019. (R. at 68.) On December 13, 2019, a different ALJ issued an unfavorable decision and found, among other things, that Plaintiff's back pain was non-severe. (R. at 68–84.) Reviewing the instant Application, the ALJ found Plaintiff had rebutted the presumption of non-disability arising from the prior denial, as there was a "'changed circumstance' due to [Plaintiff's] spine and knee issues having worsened . . . to the point that they are now severe." (R. at 13.)

September 4, 2020, and upon reconsideration on February 8, 2021. (*Id.*) On February 14, 2022, Plaintiff appeared before the ALJ for a hearing regarding her claim. (*Id.*) The ALJ denied Plaintiff's claim on March 4, 2022. (R. at 10–34.) On April 21, 2022, the Appeals Council denied Plaintiff's Request for Review. (R. at 1–6.) This appeal followed.

The Court has reviewed the medical record and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the severe impairments of spine degenerative disc disease, right knee degenerative joint disease, obesity, posttraumatic stress disorder ("PTSD"), depression, and alcohol abuse. (R. at 16.) Ultimately, the ALJ evaluated the medical evidence and testimony from Plaintiff and a vocational expert and concluded that Plaintiff was not disabled. (R. at 27.)

The ALJ first determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 16.) The ALJ then found that Plaintiff has the residual functional capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b), except she can do lifting of twenty pounds occasionally and ten pounds frequently; carrying of twenty pounds occasionally and ten pounds frequently; sitting for six hours, standing for six hours, walking for six hours; and pushing or pulling as much as can [sic] lift and carry. [Plaintiff] can climb ramps and stairs frequently, but never climb ladders, ropes, or scaffolds; can stoop frequently, kneel frequently, crouch frequently, and crawl frequently; is able to perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work); is able to perform simple work-related decisions; is able to interact with supervisors frequently; is able to interact with coworkers frequently; and is able to interact with the public frequently.

(R. at 18–26.) The ALJ found that while Plaintiff was unable to perform any of her past relevant work, she can perform other work in jobs existing in significant numbers in the national economy, including as a "checker," housekeeper cleaner, or cafeteria attendant, such that she is not under a disability as defined in the Social Security Act. (R. at 27.)

. . .

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.*; *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work.

20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

### III.     ANALYSIS

Plaintiff raises two arguments for the Court's consideration. First, she argues the ALJ erred by failing to provide sufficient explanation supported by substantial evidence for his rejection of the medical opinions provided by her treating psychiatrist, Benjamin Metelits, M.D. (Pl. Br at 13–18.) Second, she argues the ALJ erred by rejecting her symptom testimony without providing sufficient and adequately supported reasons for doing so. (*Id*. at 18–24.) The Court examines these arguments in turn.

### A.     Evaluation of the Medical Opinion Evidence

Plaintiff's claim is governed by the Social Security Administration's 2017 regulations for evaluating medical opinion evidence, which instruct ALJs not to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). ALJs must instead evaluate each opinion's overall persuasiveness and articulate their conclusions utilizing two key factors: "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). ALJs are not required to explain how they considered other factors—such as the nature of the relationship with the claimant, the frequency of examinations, or the doctor's specialization—unless the ALJs conclude that two or more medical opinions about the same issue are equally well-supported and consistent with the record, but not identical. *See* 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit recently addressed the effect of these new regulations on well-established circuit precedent recognizing a hierarchy of medical opinions and affording deference to the opinions of examining or treating physicians. In *Woods v. Kijakazi*, the Ninth Circuit held that the revised regulations "are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on

account of their relationship with the claimant." 32 F.4th 785, 792 (9th Cir. 2022). The Ninth Circuit held its longstanding requirement that ALJs provide "specific and legitimate reasons" for rejecting the controverted opinion of a treating or examining doctor was incompatible with the revised regulations. *Id*. Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, ALJs must still provide an explanation supported by substantial evidence. *Id*. This means ALJs "must 'articulate . . . how persuasive' [they find] 'all of the medical opinions' from each doctor or other source . . . and 'explain how [they] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Here, the ALJ considered several assessment forms completed by Dr. Metelits. Dr. Metelits is a psychiatrist at the Department of Veterans Affairs (the "VA"), where he has treated Plaintiff since April 2017. Plaintiff's VA records reflect that she served in the Army National Guard from November 2007 to April 2008 and in the Army from April 2008 to April 2012. (R. at 251.) Plaintiff recounted to Dr. Metelits that her PTSD arose in part from a sexual assault committed by a superior officer. (R. at 1041–45.) She described a culture in which she felt she could not report sexual harassment. (*Id*.) She also recounted experiencing combat in Afghanistan, where she witnessed an improvised explosive device kill a team member. (*Id*.) Plaintiff's VA records reflect a steadily increasing service-connected disability rating; by April 2020, the VA had given Plaintiff a PTSD disability rating of 100 percent based on a variety of symptoms and limitations. (R. at 251–55.[2])

Dr. Metelits completed a medical assessment form for Plaintiff on October 6, 2020. (R. at 1279–82.) Dr. Metelits noted Plaintiff's diagnoses of chronic PTSD with panic attacks related to combat and military-sexual trauma and "recurrent" major depressive disorder. (R. at 1279.) He opined Plaintiff had a severe limitation—defined as an impairment that "precludes ability to perform work-related functions 21% or more of an

---

[2] In his decision in this matter, the ALJ noted Plaintiff's 100 percent disability rating by the VA. (R. at 24.) The ALJ stated he was not bound by the VA's decision, however, which he noted may have involved application of different standards. (*Id*.) *See Kitchen v. Kijakazi*, --- F.4th ----, 2023 WL 5965704, at *5 (9th Cir. 2023). The ALJ also stated he had cited and considered in his decision the relevant evidence relied upon by the VA. (R. at 24.)

- 5 -

8-hour workday"—in the following areas: maintaining attention and concentration without interruptions from psychologically-based symptoms; maintaining a schedule and regular attendance, and being punctual within customary tolerance; working in coordination with or proximity to others without distraction; completing a normal workday and workweek without symptom-based interruptions and working without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism; getting along with co-workers or peers; responding appropriately to changes in the work setting; and traveling to unfamiliar places or using public transportation. (R. at 1280–81.) He opined Plaintiff would likely miss work more than three times per month due to her impairments or treatments. (R. at 1282.) He commented that Plaintiff "has experienced tremendous impairment despite active engagement in mental health treatment." (*Id.*)

Dr. Metelits completed another assessment form on January 18, 2022. (R. at 2400–03.) Dr. Metelits noted the same diagnoses he had in October 2020. (R. at 2400.) He assessed the same severe limitations as before and assessed additional severe limitations in understanding and remembering detailed instructions; interacting generally with the public; and carrying out detailed instructions. (R. at 2400–02.) Dr. Metelits again opined Plaintiff would likely miss work more than three times per month. (R. at 2403.)

The ALJ addressed Dr. Metelits's assessments in two relatively brief paragraphs. The ALJ first reviewed the assessments, noting the October 2020 assessment was made on a "check-off form" with little discussion and the subsequent form—which the ALJ mistakenly wrote was from January 2021 rather than January 2022—was "similar" and "nearly identical." (R. at 20.) The ALJ also considered an assessment form completed in December 2019, before Plaintiff's alleged date of onset in this case. (*Id.*) The ALJ concluded each of the assessments by Dr. Metelits were "not persuasive." (*Id.*) He wrote:

> Instead of extreme limitations in social interactions, [Plaintiff] had a pleasant and cooperative presentation, had a friend, and socialized with others and tolerated others in many situations. Rather than having extreme limitations in concentration, [Plaintiff] was found to be alert and attentive and could do many things requiring normal concentration and adapting to many circumstances.

- 6 -

(*Id*.) Plaintiff argues the ALJ's explanation was insufficient under the standards set forth by the agency in its 2017 regulations and the Ninth Circuit in *Woods*. The Court agrees.

As to supportability, the ALJ did not specifically explain how he considered this factor. Defendant points to the ALJ's observation that Dr. Metelits's assessments were completed on "check-off" forms that included little discussion. Standing alone, however, this is not an adequate basis for discounting the assessments. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017). Moreover, the ALJ failed to note that Dr. Metelits's January 2022 form identified specific objective supporting evidence of "insomnia, anhedonia, tearfulness, low energy, [and] concentration problems." (R. at 2400.) Similarly, despite considering Dr. Metelits's December 2019 opinion, the ALJ failed to note the more substantial discussion contained therein about Plaintiff's "severe, major functional impairment." (R. at 913.) Importantly, there is support for Dr. Metelits's assessments in his treatment notes. (*See, e.g.*, R. at 1048, 1353, 1343, 2360, 2283, 2472.) Thus, the ALJ's citation to occasional normal findings does not appear to capture the complete picture of Dr. Metelits's treatment notes, which reflect a much greater degree of fluctuation in Plaintiff's symptoms and clinical observations than the ALJ suggested. More fundamentally, the ALJ failed to explain how these occasional normal findings eroded the supportability of Dr. Metelits's assessments of specific work-preclusive limitations.[3]

As to consistency, the ALJ again did not specifically explain how he considered this factor. Even viewing the decision as a whole, the decision fails to provide an adequate and sufficiently supported explanation of the inconsistencies between Dr. Metelits's specific assessments and other evidence in the record. Defendant points to the ALJ's discussion of the results of an examination by consultative psychologist Jose Abreu, Ph.D. Dr. Abreu concluded that Plaintiff had feigned memory issues during his examination, which conclusion the ALJ found persuasive. (R. at 19–20 (citing R. at 1272–77).) The Court agrees that this specific conclusion has support in the record. However, the ALJ failed to

---

[3] The ALJ's cursory evaluation of Dr. Metelits's opinions creates doubt about whether he properly considered Dr. Metelits's lengthy treatment relationship with Plaintiff. While this factor no longer compels deference, and ALJs are not required to *explain* how they considered this factor, ALJs must consider it nonetheless. *See* 20 C.F.R. § 404.1520c(c)(3).

explain how this conclusion is inconsistent with the many limitations Dr. Metelits assessed that were unrelated to memory, such as those related to Plaintiff's social abilities in a work environment. On this score, the ALJ focused on the fact that Plaintiff "had a friend" and acted appropriately during her medical appointments and in the limited social settings in which she occasionally ventured. However, the ALJ failed to sufficiently explain how these findings undermine Dr. Metelits's assessments that Plaintiff has severe limitations when it comes to the social requirements of substantial gainful employment over an eight-hour workday. Even the state-agency consultants concluded Plaintiff should have "limited social contact" rather than the "frequent" social interactions the ALJ found Plaintiff could tolerate in formulating her RFC. (*Compare* R. at 99, 103, 127, 133, *with* R. at 18.)

Thus, the Court finds the ALJ failed to provide a sufficient and adequately supported explanation for his rejection of Dr. Metelits's assessments of Plaintiff's limitations.

**B.     Evaluation of Plaintiff's Symptom Testimony**

Next, Plaintiff argues the ALJ failed to provide sufficient and adequately supported reasons for rejecting her symptom testimony. Because the ALJ found Plaintiff had presented objective medical evidence of an impairment which could reasonably be expected to produce her alleged symptoms and found no evidence of malingering, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the severity of her symptoms. *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (citations and quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

Here, the ALJ found that "[a]s for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms [sic], they are inconsistent because the medical evidence of record shows that she is not as disabled as alleged." (R. at 19.) The Ninth Circuit has long rejected boilerplate language like this when the ALJ fails to subsequently specify "what parts of the claimant's testimony were not credible and why."

*Treichler*, 775 F.3d at 1103 (citing *Moore v. Colvin*, 743 F.3d 1118, 1122 (7th Cir. 2014)). While the ALJ did more than merely recite this boilerplate language here, the ALJ frequently failed to link his reasons for discounting Plaintiff's allegations with specific parts of her testimony he found lacking credibility. Even where the ALJ made the necessary link, however, the Court finds the ALJ's offered reasons lacking in support.

First, the ALJ found Plaintiff's allegations were not fully consistent with the objective medical evidence. While the Court agrees that certain of Plaintiff's allegations were indeed contradicted by certain evidence in the record—her allegations of memory loss, for example—other purported inconsistencies were lacking. For example, Plaintiff alleged that during severe bouts of depression, she had difficulty getting out of bed and had difficulty concentrating. (R. at 42, 45.) The ALJ found this inconsistent with her occasional normal findings during certain time-limited examinations—which, as noted, were counterbalanced by findings of depressed mood and affect during other examinations—but this is not an apples-to-apples comparison. It does not justify rejecting Plaintiff's testimony about "bad days." Defendant again points to Dr. Abreu's evaluation casting doubt on Plaintiff's depression. The Court cannot agree that Dr. Abreu's one-off examination of Plaintiff after his review of only a single prior medical record (*see* R. at 1272) is sufficient on its own to justify discounting Plaintiff's testimony, much of which was supported by the assessments of Dr. Metelits over the course of their multi-year relationship.

Second, the ALJ made several references to improvements in Plaintiff's symptoms with appropriate treatment. To defend the ALJ's analysis, Defendant cites to the Ninth Circuit's recognition that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability," *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), and that "[i]mpairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). But while the record shows Plaintiff's mental health symptoms did improve with medication, the record does not reflect improvements to the degree that Plaintiff's symptoms were "relieved" or her impairments "effectively controlled." By January 2022,

for example, Plaintiff noted improvement in her depression such that she did not have suicidal ideation daily, but she still occasionally suffered from serious bouts in which she felt "extremely depressed like I don't want to live anymore." (R. at 2454.) The Court cannot agree with the ALJ's suggestion that the record of Plaintiff's improvement on medication suggests her mental health impairments might be "mild." (*See* R. at 21.)

Finally, the ALJ pointed to Plaintiff's activities of daily living as contradicting her allegations of disabling impairments. Upon review, however, the ALJ overstated the extent to which Plaintiff's daily activities indicate the ability to sustain substantial gainful employment. Defendant implicitly concedes this, arguing that Plaintiff's daily activities contradicted her testimony such that, even if they do not themselves show her ability to work, they undermine her credibility. (Def. Br. at 18 (citing *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012).) However, the record does not support the kind of stark contradiction between Plaintiff's allegations and her daily living that would be required. For example, the ALJ found Plaintiff's "inability to get out of bed is not corroborated by the record reflecting [she] accomplishes many tasks regularly." (R. at 22.) But Plaintiff did not testify she was unable to get out of bed regularly; she testified that when her depression was "at its worst, its absolute worst," she was "not being able to get out of bed really." (R. at 44–45.) This testimony is not inconsistent with the ability to accomplish certain tasks on the days she does not suffer from serious bouts of depression. Nor is it inconsistent, for example, with Dr. Metelits's assessment that Plaintiff would likely miss three or more days of work per month due to her mental impairments. (*See, e.g.*, R. at 2403.)

## IV. CONCLUSION

In sum, the Court finds the ALJ failed to provide a sufficient and adequately supported explanation for his rejection of the medical assessments of Plaintiff's longtime treating psychiatrist, Dr. Metelits, and Plaintiff's testimony about her symptoms. Given that this evidence, if credited, likely precludes Plaintiff's ability to perform substantial gainful work, reversal is required. The Court is not persuaded that the credit-as-true rule should apply, however. This case does not present the "rare circumstances" in which "no

useful purpose would be served by further administrative proceedings." *Treichler*, 775 F.3d at 1100 (citations and quotation marks omitted). The Court therefore will remand for further administrative proceedings not inconsistent with its analysis herein.

**IT IS THEREFORE ORDERED** reversing the Administrative Law Judge's March 4, 2022 decision (R. at 10–34) as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment and close this case.

Dated this 21st day of September, 2023.

Honorable John J. Tuchi
United States District Judge